IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12CR0104-MHT-TFM |
| | ) | [wo] |
| FRANK J. TEERS | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  The defendants, Paul Hulse, Sr. ("Hulse"), Steven Mock ("Mock"), and Frank Teers ("Teers") (collectively "Defendants"), were charged in an indictment on June 6, 2012, with one count of conspiracy to commit wire fraud and financial institution fraud, six counts of wire fraud, and three counts of financial institution fraud (Doc. 1). Pending before the court is a *Motion to Suppress IRS Interrogations*, *Motion to Exclude Under FRE 403 & 404(b)*, and *Motion to Strike Paragraph 22 of the Indictment* (Doc. 49).

The Court held an evidentiary hearing on the motions on November 13-14, 2012 (Doc. 106, filed November 14, 2012).  Based on the evidence presented to the Court, arguments of the parties, and for reasons set forth herein the Magistrate Judge recommends that the

District Judge **DENY** the *Motion to Suppress IRS Interrogations*, *Motion to Exclude Under FRE 403 & 404(b)*, and *Motion to Strike Paragraph 22 of the Indictment* (Doc. 49).

## II. FACTS

The indictment alleges that over a four-year period, Hulse attempted to obtain several large loans based upon false representations that he is wealthy and owns a large bond portfolio. *See* Doc. 77 at 1. Allegedly Mock, in his capacity as an attorney, and Teers, in his capacity as a stock broker, provided prospective lenders with documents and oral affirmations which gave the lending institutions the impression that Hulse owned bonds which he did not own. *Id.* The indictment avers that Hulse did not own any bonds, nor did he possess any significant assets at the time the alleged representations were made to the lending institutions. *See* Doc. 77 at 2. Defendants unsuccessfully solicited four lending institutions between 2003 and 2005. *Id.* In 2005, Federal Land Bank of South Alabama ("Land Bank") lent Hulse a total of $68.5 million involving two loan transactions based upon the alleged false representations.[1] *Id.* In 2007, Defendants were again unsuccessful in the solicitation of a $350 million loan from a group of loan brokers. *Id.* Each solicitation allegedly involved communications sent from Defendants in the forms of letters and faxes misrepresenting the financial position of Hulse. *See* Doc 64 at 5-6.

The indictment returned on June 6, 2012, charges the Defendants with one count of

---

[1] In August of 2005, Land Bank processed a loan to Defendants in the amount of $30 million. Subsequently in December 2005, Land Bank extended Defendants a $90 million line of credit, of which Defendants withdrew $68.5 million and paid off the initial $30 million loan.

conspiracy to commit wire fraud and financial institution fraud (Count 1), six counts of wire fraud (Counts 2-7), and three counts of financial institution fraud (Counts 8-10). *See* Doc. 77 at 2; *see also* Doc. 1.

### III. DISCUSSION

In February and June of 2005, Special Agent Michael Caldwell ("Agent Caldwell") of the Internal Revenue Service Criminal Division made a telephone call to defendant Teers to arrange an interview as part of an investigation into possible tax crimes by Hulse. Caldwell testified that he could not recall the exact conversation preceding the interview but in substance he identified himself as an IRS Agent and that he wanted to interview Teers in conjunction with an investigation into someone else. Caldwell assured Teers that he was not a suspect and the interview could happen at the IRS office, Teers' home, or another suitable location. According to Caldwell, Teers chose to talk and come to the IRS Office. On February 16, 2005, Agent Caldwell interviewed Teers in the public, nonsecure section of the IRS office. Teers conceded during the suppression hearing that Agent Caldwell asked Teers questions related to his tax investigation of Hulse. At the conclusion of the interview, Teers went about his business.

As the tax related investigation of Hulse moved further, Agent Caldwell called defendant Teers again to seek another interview. Agent Caldwell testified that Teers agreed to return to the office and talk. On June 15, 2005, Teers met Agent Caldwell and another IRS Special Agent at the IRS office. Both agents asked Teers additional questions related to the

tax investigation of Hulse.  In the final portion of the interview Agent Caldwell told Teers that Hulse made certain representations to others which, if false, might constitute bank fraud. Teers denied any criminal involvement with any bank fraud which Hulse might have tried to perpetrate.  Teers went about his business after the interview.  Shortly thereafter, the IRS ended the criminal tax investigation into the activities of Hulse, and did not bring charges against anyone.

With respect to both interviews and the entire investigation, Agent Caldwell testified that defendant Teers was never a suspect in the investigation and because he was never a suspect he never gave any Miranda warnings to Teers.  Agent Caldwell testified that had he ever thought defendant Teers was involved in the crime he was investigating he would have told Teers about his Miranda rights and would have been obligated under IRS regulations to give Teers Miranda warnings.  Further, Agent Caldwell testified that it is merely fortuitous if any information he learned from defendant Teers might be relevant to or incriminate someone indicted in the case at bar.  In fact, Agent Caldwell said it was at least two years after his investigation was over before he knew about the investigation which culminated in the indictment at bar and that he did not pass along any information from his interviews until another agency underwent the statutory procedure to obtain his files from the tax investigation of Hulse.  On the other hand, defendant Teers testified the only reason he gave either interview was Agent Caldwell threatened to compel his cooperation by issuing an IRS Summons which would obligate him under the law to provide whatever information IRS

might seek in connection with the tax investigation. Defendant Teers also testified that under the circumstances of the interview even absent the threat of a Summons he felt compelled to cooperate. The Court does not find defendant Teers credible.

Both sides agree that warnings against self incrimination were not given to Teers by any IRS Agents during either interview. *Miranda v. Arizona*, 384 U.S. 436 (1966). Custody is the trigger necessary to require law enforcement to give Miranda warnings. *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). Custody exists when "there is a restraint on freedom of movement 'of the degree associated with a formal arrest.'" *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000). To determine custody, whether a sufficient restraint of freedom of movement exists to trigger Miranda warnings, the determination hinges on "how a reasonable person in the suspect's situation would perceive his circumstances." *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004).

The Magistrate Judge finds that defendant Teers was not in custody during either interview. The Magistrate Judge credits the testimony of Agent Caldwell that he merely called defendant Teers and told him he was conducting a tax investigation of Hulse and that he thought defendant Teers might have some relevant information to further his investigation. The Magistrate Judge also concludes Teers knew before both interviews that he was not a suspect in the tax case directed toward Hulse, that he could decline the interview, and that each time defendant Teers came to Agent Caldwell he voluntarily submitted to an interview in the nonsecure and public area of the IRS Office. Nothing in the

location or conduct of either interview remotely leads defendant Teers or a reasonable person to believe he had any restraints or threats of restraint on his freedom. During the last portion of the second interview, IRS Agents told defendant Teers that Hulse made certain representations to other persons which, if false, might constitute bank fraud or some other crime. In addition, the Agents told defendant Teers that if the information was false and if defendant Teers knowingly assisted Hulse to present false information to others, he might be guilty of bank fraud. Defendant Teers denied any knowing involvement with any fraudulent activity or other crimes. Shortly after the exchange the Agents ended the interview and defendant Teers went about his business. Several months later, Agent Caldwell closed his investigation. No criminal tax charges were ever brought against Hulse or defendant Teers. The actions of Agent Caldwell are consistent with an investigator who came to conclude neither defendant Teers nor Hulse were criminally liable for any tax violations which was the sole issue he had authority he had to investigate.

Whether statements from either interview is admissible at trial under FRE 403 and 404(b) is solely a matter for the District Judge to determine.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the District Judge **DENY** the *Motion to Suppress* (Doc. 49).

It is further ORDERED that the Defendant file any objections to this Recommendation on or before **December 28, 2012**. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 17th day of December, 2012.

/s/ Terry F. Moorer  
TERRY F. MOORER  
UNITED STATES MAGISTRATE JUDGE