IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA       )
                               )
        v.                     )    CRIMINAL ACTION NO.
                               )      2:12cr104-MHT
STEVEN P. MOCK                 )         (WO)


OPINION AND ORDER

Defendants Steven P. Mock, Paul Hulse, Sr., and Frank
J. Teers, are criminally charged with fraudulently
inducing a bank to make a large loan by falsely
representing Hulse as a wealthy individual with
significant assets that could be pledged as collateral.
The government alleges that Mock and the others were
aware that Hulse had no such assets, and they fabricated
documents showing the contrary.  Mock, a lawyer who was
representing Hulse, is charged with knowingly aiding the
scheme.  The government claims that the defendants'
conduct violated 18 U.S.C. §§ 1349 (conspiracy), 1343
(wire fraud), and 1344 (bank fraud).

This criminal case is currently before the court on Mock's motion to suppress. An evidentiary hearing was held on the motion on May 9, 2013.[1]

## I. BACKGROUND

Prior to proceedings in this criminal case getting significantly underway, Mock was a witness in a civil trial in the United States District Court for the Southern District of Texas. The Texas civil trial involved the same underlying facts alleged in this Alabama criminal prosecution. There, Mock gave testimony in both a pre-trial deposition and in the trial itself. During both occasions, Mock answered many questions that were asked, and, with others, he elected not to answer substantively and to invoke instead either the Fifth Amendment, the attorney-client privilege, or both. He now contends that, at the trial, he answered questions

_____

1. The motion was originally referred to the magistrate judge for a report and recommendation. This court subsequently decided to hear the matter de novo.

only because the judge ordered him to forgo asserting the Fifth Amendment or the attorney-client privilege and that, even if the judge did not explicitly order as much, he reasonably interpreted the judge's ambiguous instructions in that manner. Therefore, he argues, because he was ordered (or he reasonably believed he was ordered) to forgo asserting his rights, any statements he made in the Texas civil trial should now be suppressed from being introduced as evidence in this Alabama criminal trial. Additionally, he argues that any statements he made in the earlier deposition in the Texas civil proceedings should be suppressed as well.

## II. DISCUSSION

### A. Testimony in the Texas Civil Trial

#### 1.

The Fifth Amendment provides that, "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The amendment

"does not preclude a witness from testifying voluntarily in matters which may incriminate him." United States v. Monia, 317 U.S. 424, 427 (1943). Once a person voluntarily testifies (whether in a civil trial, a deposition, or another proceeding), any Fifth Amendment right he may have otherwise had with respect to the testimony he gave is waived. See United States v. White, 846 F.2d 678, 690 (11th Cir. 1988) ("A witness who testifies at any proceeding, instead of asserting his Fifth Amendment rights, loses the privilege."). If a person voluntarily gives such testimony, he cannot preclude those statements from being introduced as evidence in a subsequent criminal trial. Id. ("A civil deponent cannot choose to answer questions with the expectation of later asserting the Fifth Amendment.").

Mock asks this criminal court to suppress evidence of the testimony he voluntarily gave at the prior civil trial without claiming the Fifth Amendment. See Def.'s Mot. (Doc. No. 64). But, because Mock chose to answer

questions while on the witness stand, he cannot now expect to assert the Fifth Amendment. <u>See</u> <u>White</u>, 846 F.2d at 690. The law clearly provides that he "los[t] the privilege." <u>Id</u>.

Mock argues that this result should not follow because, at the civil trial, he was "improperly compelled to respond" to questions instead of invoking the Fifth Amendment. Def.'s Mot. (Doc. No. 64). However, the civil trial transcript shows otherwise. Mock points to a single exchange in the transcript where the court, he contends, improperly compelled him to testify:

> "[EXAMINING ATTORNEY]: ... What did you mean by [stating that you were a] 'senior trust officer' [for Paul Hulse, Sr. and his various companies]?
>
> "[MOCK]: I had a couple of capacities. One is I was a lawyer for each stage; therefore, I protect my privilege which I must assert. Secondly, I would invoke the Fifth Amendment on the question, ma'am.
>
> "THE COURT: ... [L]et me inject something here. You're representing yourself, Mr. Mock?

"[MOCK]: Yes, Judge.

"THE COURT: You are an attorney licensed to practice in the State of Texas.

"[MOCK]: Yes, Judge. ...

"THE COURT: ... [Y]ou have asserted a Fifth Amendment privilege and -- against self-incrimination on the last question I believe that was asked?

"[MOCK]: Correct.

"THE COURT: And you understand that, as an attorney, you do not have a privilege of participating -- I'm not suggesting that you are. You have -- you do not have the privilege of participating in criminal activity and asserting the attorney-client privilege as a basis for that -- for not disclosing criminal activities. Do you understand that?

"[MOCK]: I was advised by my criminal lawyer in Alabama to assert the privilege.

"THE COURT: I'm not suggesting that you don't assert it. What I am trying to make sure, and certainly you can confer with your attorney in Alabama, if you have not already, is that the law does not protect you from prosecution in criminal activity simply by you saying you cannot -- maybe I should say it differently. That if your clients are participating in criminal activity and

6

you are aware of that fact, the attorney-client privilege does not protect you from prosecution yourself where that activity is not disclosed. You cannot assert an attorney-client privilege and say, 'I didn't do anything. I just gave them advice.'

"[MOCK]: I do understand.

"THE COURT: You understand that?

"[MOCK]: Yes.

"THE COURT: All right. I might not have said it perfectly, but I hope you understand where I'm going.

"[MOCK]: I do, and I thank you, Judge.

"THE COURT: Sure."

Trial Tr. (Doc. No. 81), Exh. 2, at 230:1-232:5.

Contrary to Mock's contention, nowhere in that exchange does the Texas civil court prohibit him from asserting his Fifth Amendment right. What actually happened is dramatically different. In actuality, after Mock, asserted both the attorney-client privilege and the Fifth Amendment ("I was a lawyer ...; therefore, I protect my privilege which I must assert. Secondly, I

would invoke the Fifth Amendment."), the court advised
him as to two principles of law.  First, the court
advised Mock of the crime-fraud exception to the
attorney-client privilege, that is, that, if Mock's
client's made communications to Mock for the purpose of
committing a crime or fraud, the privilege does not
protect those communications from disclosure ("[Y]ou do
not have the privilege of participating in criminal
activity and asserting the attorney-client privilege as
a basis for ... not disclosing criminal activities.").
That statement of the law is unquestionably correct.
See, e.g., In re Grand Jury Investigation, 842 F.2d 1223,
1226 (11th Cir. 1987) ("The attorney-client privilege
does not protect communications made in furtherance of a
crime or fraud.").

Second, the Texas civil court advised Mock that, if
his "clients [were] participating in criminal activity
and [he was] aware of that fact" (but nevertheless aided
the clients in their criminal activities), "the attorney-

client privilege does not protect [him] from prosecution [him]self...." That is, he can be convicted of aiding in the criminal scheme despite his aid being in the nature of legal services. No citation is necessary to show that is obviously true.

The implication of the civil court's statements was: Mock may be, hypothetically, indicted for aiding his client's criminal conduct (as he was), and, in a subsequent criminal trial, the attorney-client privilege will not protect him, but, the Fifth Amendment will, if Mock does not waive it in the civil trial. In other words, insofar as that court commented at all on Mock's desire to invoke the Fifth Amendment, the court implied that such invocation would be wise. Of course, the court did not explicitly advise Mock to assert the Fifth Amendment (indeed, such an explicit instruction would surely frustrate the plaintiffs in the case), but that was the implication of his explanation that the Fifth Amendment will protect Mock in a subsequent prosecution

(if not waived), but the attorney-client privilege will not. The civil court even advised Mock to confer with his criminal defense attorney ("[C]ertainly you can confer with your attorney in Alabama, if you have not already"). Mock stated three times that he understood, and he then thanked the court. It is clear that Mock understood that it was in his interest to assert the amendment, and he was free to do so at his election.

Lastly, one thing cannot be seriously contested: The Texas civil court told Mock that, "I'm not suggesting that you don't assert it." Whether the "it" referred to the Fifth Amendment, the attorney-client privilege, or the moon, that court was incontrovertibly "not suggesting" that Mock not assert it, whatever "it" was. End of story.

Nevertheless, if there can be any doubt about Mock's understanding, subsequent parts of the transcript should dispel it. Several minutes after the above-quoted exchange, the examining attorney asked Mock a question to

which Mock substantively responded. The attorney then asked Mock whether, when he was previously deposed, he invoked the Fifth Amendment instead of answering that same question. Mock answered that he could not recall. The attorney, dissatisfied that Mock had not given a definitive answer one way or the other, objected. The civil court stated that it will not sustain the objection because "[Mock is] the person who is giving the testimony [and he] has a right to ... assert the privilege." Trial Tr. (Doc. No. 81), Exh. 2, at 233:12-15 (emphasis added). The attorney clarified that his objection was not to Mock's "asserting a privilege" now, but rather, his lack of an answer regarding whether he asserted it earlier, at the deposition. Id. at 233:16-17. The court then permitted the examining attorney to show Mock the deposition transcript so that Mock could refresh his memory. After Mock read the transcript and realized that he had, in fact, invoked the Fifth Amendment at the earlier deposition, he commented to the court, "And I

probably should now. I should plead to the Fifth Amendment. But I answered...." Id. at 234:10-12. The court replied, "Well, let me just say, at this point, you waived your Fifth Amendment as to that question. Let's proceed." Id. at 234:13-15.

In short, Mock was told that he "ha[d] the right" to assert the Fifth Amendment, but, if he did not do so, and instead gave testimony, the result would be a waiver. Mock's statement that he "probably should [have] plead[ed] ... the Fifth Amendment, [b]ut [he] [instead] answered" plainly indicates that he understood what had transpired: that he possessed a Fifth Amendment right that he was free to assert and he waived that right by failing to do so. That Mock now contends that the court, which told him that he "ha[d] the right" to assert the Fifth Amendment, was somehow forbidding him from asserting the right, is meritless.

There is more. During the remainder of Mock's testimony in the civil trial, after he had been told

12

explicitly that he had the right to assert the Fifth Amendment, he subsequently did so three separate times. Id. at 235:22 ("I plead the Fifth Amendment privilege, ma'am."), 236:3 ("I plead the Fifth Amendment privilege, please."), and 236:6 ("I plead the Fifth Amendment privilege."). His first assertion of the Fifth Amendment was, according to the transcript, approximately four minutes after the court's "compulsion" (which was actually not compulsion at all).[2] Neither the civil court nor any attorneys at the trial took exception to any of those instances. Mock's invocations of the privileges went unchallenged. There is not a single occasion in the civil trial transcript showing that Mock attempted to invoke a privilege and that the court denied him the right. Mock acknowledges to this criminal court that he indeed asserted his rights on these occasions after the

_____

2. He also asserted the attorney-client privilege on several occasions. Trial Tr. (Doc. No. 81), Exh. 2, at 236:22 ("I plead my rights under the attorney-client privilege.") and 238:13 ("I plead my attorney-client privilege.").

13

civil court had ostensibly forbidden him from doing so, but he offers entirely no explanation as to how he could have done that when he believed he was ordered not to. The failure to even attempt to explain this discrepancy speaks volumes.

As has been noted, during the course of the deposition and civil trial, there were occasions when the same question was asked of Mock first at the deposition and then again at trial, and Mock asserted the Fifth Amendment on the first occasion but not the second. Mock now contends that this fact supports that he believed the trial court to have forbidden assertions of the Fifth Amendment. But that argument is meritless. Mock himself explained why at the civil trial. There, subsequent to all of the above-referenced exchanges, Mock substantively answered one of the examining attorney's questions about Hulse's conduct. The attorney then asked, "when I asked you that question at your deposition, did you plead the Fifth Amendment?" Id. at 242:14-16. Mock responded that

14

he "[m]ay have." Id. at 242:17. The attorney asked, "So at the time I asked you that question at your deposition, you thought the answer to that question might incriminate you?" Id. at 242:18-20. Mock answered, "No. I thought that you could plead the Fifth if you could anybody [sic]. But I learned from the Judge you can't do that as I've tried to act in accordance with these instructions of the Court." Id. at 242:21-24. The attorney asked, "So at the time that I took your deposition, ... you thought the answer [to the question] might incriminate [Hulse or his company]?" Id. at 242:25-243:3. Mock "thought it might, yes, ma'am." Id. at 243:4.

The civil trial transcript is obviously missing a word from Mock's testimony, but, in context, the missing word is clear: Mock's explanation that he previously thought the Fifth Amendment could be invoked "if you could anybody" (a nonsense statement unless a word is missing) was an erroneous transcription for Mock's actual statement that he believed the amendment could be invoked

15

"if you could _incriminate_ anybody."  That is, at the time

of the deposition, Mock erroneously believed that he

could assert the Fifth Amendment to avoid incriminating

Hulse (whose conduct was the subject of the attorney's

questioning) or another third party, and, as such, he

invoked the amendment accordingly.  But, at the later

trial, Mock became aware that the amendment could be

asserted only to avoid incriminating himself, not to

avoid incriminating third parties.  And that is indeed

correct.  <u>See</u> U.S. Const. amend. V ("No person ... shall

be compelled in any criminal case to be a witness <u>against</u>

<u>himself</u>.") (emphasis added); <u>Couch v. United States</u>, 409

U.S. 322, 328 (1973) ("The Constitution explicitly

prohibits compelling an accused to bear witness 'against

himself': it necessarily does not proscribe incriminating

statements elicited from another.").  Before Mock's own

testimony at the civil trial began, but while Mock was in

the courtroom, the court instructed an earlier witness on

this distinction between protecting oneself and

protecting another.  Mock obviously heard it and understood.

Should there still be any doubt whether this criminal court is correctly interpreting Mock's explanation for why he, at times, asserted the Fifth Amendment in the deposition but not at the trial, it should be noted that Mock repeated this same explanation a second time.  In an on-the-record hearing before the civil court after the trial had ended, Mock stated to the court, "I did take the Fifth.  And I took the Fifth more frequently by deposition.  But then you admonished the parties that the Fifth was appropriately taken only if I were personally opposed [sic: almost certainly should be "exposed"] to a risk.  And so, based upon that admonition, I took the Fifth less frequently ....."  Hr'g Tr. (Doc. No. 200), Exh. 1, at 6:22-7:3.[3]  It could not be clearer that when

_____

3.  At that same hearing, the court told Mock that, "I am not saying or suggesting for one minute you should waive [the Fifth Amendment], but this is a choice that you have to make...."  Hr'g Tr. (Doc. No. 200), at 7:13-22.  If that same court earlier forbade Mock from
(continued...)

Mock gave testimony at trial, he understood correctly when he could lawfully invoke the Fifth Amendment (to protect himself) and when he could not (to protect a third party), and he acted accordingly.

Finally, in testimony before this criminal court in support of his suppression motion, Mock said that he believed that he had been ordered to forgo asserting his Fifth Amendment right. After a review of all the evidence and after observing Mock during his testimony, the court finds, factually, that Mock did not believe that he had been so ordered. Mock's testimony before this court is not credible.[4]

_____

(...continued)
asserting the Fifth Amendment, as Mock now contends, that statement would certainly have been a surprising reversal.

4. It should be noted that Mock stated inaccurately in his motion to suppress that, after the civil court "compell[ed] his response," "Mock no longer asserted the Fifth Amendment privilege." Def.'s Mot. (Doc. No. 64) at 14 (emphasis added). As this court has shown, that is simply not true. Mock asserted the Fifth Amendment three more times. In the hearing before this court, that inaccuracy was not repeated again, but the earlier
(continued...)

In sum, the evidence shows, and the court so finds, factually, that Mock was accurately informed of his rights, he understood them well, and he exercised them accordingly. Therefore, Mock "cho[]se to answer questions" at the civil trial and he cannot now invoke the Fifth Amendment to make those answers go away--he "los[t] the privilege." White, 846 F.2d at 690.[5]

----

(...continued)
inaccuracy contained in the actual motion before this court was not corrected.

5. The court is firmly convinced that Mock did not actually believe that the trial court had forbidden him from asserting his rights under the Fifth Amendment. Based on the record, such a belief would have been entirely unfounded. However, even if Mock did, in fact, subjectively carry such an unreasonable belief despite all evidence to the contrary, that subjective belief alone would not warrant suppression under the Fifth Amendment. For testimony to be "compelled" under the Fifth Amendment, the declarant must both believe that the court is ordering his testimony and that belief must be objectively reasonable. Cf. United States v. Waldon, 363 F.3d 1103, 1112 (11th Cir. 2004) (government employee's testimony is compelled in violation of the Fifth Amendment if the employee "subjectively believed that he would lose his job if he refused to answer questions and that his belief was objectively reasonable") (emphasis added); United States v. Vangates, 287 F.3d 1315, 1322 (11th Cir. 2002) (same).

19

In addition to the Fifth Amendment, Mock also relies on the attorney-client privilege in his suppression motion, but it is equally unavailing here. The attorney-client privilege belongs to the client (here, Hulse), not the attorney (here, Mock). <u>See</u> <u>United States v. Noriega</u>, 917 F.2d 1543, 1551 (11th Cir. 1990). The client is, of course, free to waive the privilege if he so desires, and if he does, "the attorney may not assert it, either for the client's or his own benefit." <u>Id</u>. As Mock himself concedes, his client, Hulse, was present throughout the civil trial, and at no point did Hulse attempt to assert the privilege to bar Mock giving any of his testimony. As such, to whatever extent Hulse (or Mock, in his capacity as Hulse's attorney) may have otherwise had to have barred such testimony, he waived it by remaining silent and allowing Mock's statements to go unchallenged. <u>See</u> 1 Kenneth S. Broun, <u>McCormick on Evidence</u> § 93 (6th ed.) ("Of course, if the holder of the privilege fails to

claim his privilege by objecting to disclosure by himself or another witness when he has an opportunity to do so, he waives his privilege as to the communications so disclosed."). "[I]t has long been held that once waived, the attorney-client privilege cannot be reasserted." United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987). Neither Mock nor Hulse can now revive the privilege.

## B. Testimony in the Texas Civil Deposition

Lastly, the court turns to Mock's request that all statements made in the deposition in connection with the Texas civil trial be suppressed. At the hearing before this court, Mock's counsel struggled to articulate a legal argument for why they should be. The argument seemed to boil down to, because, at the time of the deposition, everyone involved knew that Mock was the target of a criminal prosecution, the Fifth Amendment should have precluded anybody from asking Mock questions.

That argument is without merit. Mock has shown no law supporting it. Again, Mock voluntarily chose to answer questions at the deposition, and, as such, he "los[t] the privilege" of remaining silent. White, 846 F.2d at 690. Mock's counsel also argued that the plaintiffs in the civil case were acting as "stalking horses" for the government, but there is entirely no evidence in the record to support that allegation.

***

Accordingly, it is ORDERED that defendant Steven P. Mock's motion to suppress (Doc. No. 64) is denied. This denial is without prejudice to assertion at trial of testimonial privileges, including the Fifth Amendment, the attorney-client privilege, and others in cases where the privilege has not been previously waived.

DONE, this the 13th day of May, 2013.


        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE